Dear Representative Dupre:
This office is in receipt of your opinion request of recent date wherein you ask whether the Terrebonne Parish Communications District has the authority to impose an emergency telephone service charge on wireless users by virtue of the proposition passed in November, 1988. Your letter raised the issue whether Act No. 758 of the 1997 regular session required the district to hold another election to extend the imposition of the present service charge to this new group, wireless users.
The authority to levy an emergency telephone service charge, with the approval of a majority of the voting persons in the communications district, derives from LSA R.S. 33:9106 (B)(1):
 The governing authority of the district may, when so authorized by a vote of a majority of the persons voting within the district in accordance with law, levy an emergency telephone service charge in an amount not to exceed five percent of the tariff rate. . . . Any such service charge shall have uniform application and shall be imposed throughout the entirety of the district to the greatest extent possible in conformity with availability of such service in any area of the district.
Act No. 758 of the 1997 regular session amended and reenacted LSA R.S. 33:9102 (B) which has no bearing on the issue presented. As amended, LSA R.S. 33:9102 (B) simply authorizes Terrebonne Parish Communications District to provide "other communications enhancements" which will make the system more efficient.
The act also created LSA R.S. 33:9131.5: Certain communicationsdistricts; funding emergency telephone service charge
The relevance of this provision to the issue presented is twofold. First, LSA R.S. 33:9131.5 (A)(6) has expanded the definition of service user to include all types of wireless service users:
 "Service user" means any person providing a landline exchange telephone service or cellular telephone or telecommunications service, specialized mobile radio service, personal communications service, or any form of wireless telephone or telecommunications service now in existence and that may be provided or developed in the future provided that subscribers to such services in the district have access and can utilize a 911 emergency telephone system.
Second, LSA R.S. 33:9131.5 (B)(4) sets forth the one circumstance when another election may be required. A communications district may convert from a service charge based on a percentage of the tariff rate to a flat-rate service charge without the voter approval unless the new flat-rate results in charges which exceed the previously authorized tariff-based rate.
 . . . The district may convert to flat-rate charges that do not exceed the previously authorized rate without the necessity of voter approval. In order for the district to adopt flat-rate service charges which exceed the previously authorized tariff-based rate, such increase must first be authorized by a vote of a majority of the persons voting within the district.
The authority to levy the service charge comes from LSA R.S.33:9106. Pursuant to that provision, Terrebonne Parish Communications District held an election in 1988 where the voters approved the proposition to levy the emergency telephone service charge of five percent (5%) of the tariff rate. LSA R.S.33:9131.5 does not require another election unless the exception of (B)(4) is implicated.
We conclude Terrebonne Parish Communications District may levy its present service charge on wireless service users without holding another election. Another election is required only if the District would choose to change the service charge so that it would exceed the five percent (5%) tariff-based rate, as stated in LSA R.S. 33:9131.5 (B)(4).
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ Emilie M. Daye Assistant Attorney General